**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALAN C. BOWMAN, | : | CIVIL ACTION |
| CHRISTINA BOWMAN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOMECARE SUPPLY, LLC, | : | NO. 07-3945 |
| | : | |
| Defendant. | : | |

## MEMORANDUM RE: SUMMARY JUDGMENT

Baylson, J.                                                                October 30, 2008

In this dispute over interpretation of an indemnification clause in a written contract

between Plaintiff and Defendant, cross-motions for summary judgment have been filed.  For the

following reasons, Defendant American Homecare Supply's Motion will be GRANTED and

Plaintiffs Alan and Christina Bowman's Motion will be DENIED.

## I.      Factual Background

### A.      Stock Sale and Stock Purchase Agreement

On February 12, 2003 (the "Closing Date"), American Homecare Supply (AHS) and

C.O.P.D., Inc., a home health care business primarily owned by the Plaintiffs, Alan and Christina

Bowman, entered into a Stock Purchase Agreement (the "Agreement") to sell 100% of C.O.P.D.

stock to AHS.  (Def.'s Statement Undisputed Fact ¶ 1.)  Under the Agreement, AHS received all

stock and assets of C.O.P.D., except the Excluded Liabilities defined in Section 1.1.  (Agreement

§ 2.1-2.2.)  Pursuant to Section 11.10, the Agreement is governed by Pennsylvania law.

AHS paid the Plaintiffs $9 million for the stock, $1.75 million of which was placed in

-1-

escrow pursuant to a separate Escrow Agreement.  (Def.'s Statement Undisputed Fact ¶ 4.)  On February 12, 2005, 50% of the escrow funds were to be released pursuant to the Bowman's written instructions, less any unresolved outstanding claims.  The remaining 50% of escrow funds were to be released on February 12, 2006, again pursuant to the Bowman's written directions, less unresolved claims.  (Compl. Ex. B ¶ 2(c), (d).)  In the event of a dispute over the funds, the Escrow Agent (Commerce Bank) was to retain the disputed amount until it received satisfactory written evidence of resolution.  (Id. ¶ 2(e).)

Pursuant to the Agreement, the Bowmans made written demand for the first release of escrow funds on February 2, 2005.  (Pl.'s Counter-Statement Undisputed Fact ¶ 6.)

The Agreement contained several indemnification provisions.  Section 9.1(a) states that the Sellers "shall indemnify and hold harmless Buyer . . . at all times from and after the Closing Date, against and in respect of Losses arising from: (i) any breach of any of the representations or warranties made by the Company or Sellers in this Agreement . . . (iii) any Excluded Liabilities . . . ."  Excluded Liabilities are defined as:

> any and all Liabilities of Sellers . . . arising from or related to any event, condition, fact or circumstance existing or arising, in whole or in part on or prior to the Effective Date [February 1, 2003], including any Liability . . . (vii) for any product liability or claim for faulty workmanship relating to any service performed prior to the Closing . . . .

(Def.'s M. Summ. J. Ex. 16 § 1.1.)  Section 9.3 explains the indemnification procedures.  Section 9.3(a)(i) states:

> The Indemnitee shall give prompt written notice to the Indemnitor of the commencement of any claim, action suit or proceeding, or any threat thereof, or any state of facts which Indemnitee determines will give rise to a claim . . . setting forth, in reasonable detail, the nature and basis of the claim and the amount thereof, to the extent known, and any other relevant information in the possession of the Indemnitee (a "Notice of Claim").  The Notice of Claim shall be accompanied by any relevant documents in the possession of the

Indemnitee relating to the claim . . . ."

(Id. § 9.3(a)(i).)  Section 9.3(a)(ii) describes that if there has been a Notice of Claim, the Indemnitor may submit written acknowledgment to Indemnitee within thirty days of receiving the Notice "stating that the Indemnitor is undertaking and will prosecute the defense of the claim under such indemnity agreements . . . ."  (Id. § 9.3(a)(ii).)  But if Indemnitor does not provide such acknowledgment, "the Indemnitee may, upon written notice to the Indemnitor, assume the defense . . . and dispose of the claim, at the sole cost and expense of the Indemnitor."  Section 9.3(a)(iii) states that whichever party is controlling the defense of the claim "shall keep the other fully informed" at all stages of the claim.  (Id. § 9.3(a)(iii).)

B.     The Fire

On January 24, 2005, a fire occurred in Steelmantown, NJ, at the home of Geraldine Connor, whose mother, Myrtle Steves, died in the fire.  (Def.'s Statement Undisputed Fact ¶ 8.) Ms. Steves was renting and using a C.O.P.D. electric home healthcare bed at the time of the fire. The particular bed was purchased by C.O.P.D. in 1998.  It was rented out several times after the Closing Date before it was rented to Ms. Steves: it was rented on the Closing Date and returned on March 13, 2003; it was re-rented on February 24, 2004 and was returned on February 28, 2004; it was rented on March 1, 2004 and returned; finally, it was rented to Ms. Steves on March 29, 2004.  (Pl.'s Counter-Statement Undisputed Fact ¶ 19.)  On January 31, 2005, Ms. Connor called AHS to report the damaged bed and death of Ms. Steves.  She stated that the fire department thought that the bed started the fire but the matter was under investigation (the "Fire Claim"). (Def.'s Statement Undisputed Fact ¶ 9.)

On February 3, 2005, AHS received a letter from Ms. Connor's insurance company,

Cumberland Insurance Group, concerning an inspection of the fire scene.  (Def.'s Statement

Undisputed Fact ¶ 11.)  On February 11, 2005, AHS's counsel participated in the inspection.  Also

on February 11, AHS sent a letter to Plaintiffs informing them of the fire and advising them of

"facts which Buyer believes will give rise to a claim for indemnification by Buyer under the

Agreement."  (Def.'s Mot. Summ. J. Ex. 1.)  The letter stated that the facts "may demonstrate a

breach of various sections of the Agreement, including, but not limited to, Section 5.8 (Personal

Property)[1] and Section 5.10 (Environmental and Safety Matters)."[2]  (Id.)  The letter also stated that

product liability claims or claims of faulty workmanship prior to the Closing Date constituted

Excluded Liabilities under the Agreement.  The letter expressed that it served as a "Claim Notice"

under § 9.3(a)(i) of the Agreement and written notice to the Escrow Agent of an outstanding claim

under the Escrow Agreement.  (Id.)  As such, the escrow funds were not distributed.

>    C.    Subsequent Communications Between the Parties

On April 19, 2005, Plaintiffs' lawyer sent a letter to Defendant requesting release of the

escrow funds and stating that, based on his understanding of the investigation, the bed was not the

cause of the fire and no claim for indemnification existed.  (Id. Ex. 10.)  After receiving no

response, Plaintiffs again made written demand for the escrow funds on May 18, 2005.  (Id. Ex.

---

[1]Section 5.8 of the Agreement contains the Sellers' Representation and Warranty that "[t]he Company's and each Subsidiary's machinery, equipment, vehicles and other tangible assets have been maintained in good working condition (normal wear and tear excepted) and are sufficient for the conduct of the Business as presently conducted."  (Def.'s M. Summ. J. Ex. 16 § 5.8.)

[2]Section 5.10 of the Agreement contains the Sellers' Representation and Warranty that the Company is in compliance with "all applicable Environmental Laws," which are defined as "all federal, state and municipal statutes, regulations, common law and similar provisions having force or effect of law . . . with respect to environmental, public health and safety, . . . product liability . . . ."  (Def.'s M. Summ J. Ex. 16 § 1.1, 5.10(a)(i)).

11.)  The Defendant sent an e-mail reply that day stating that the fire investigation was on-going and that a bed malfunction had not been ruled out as a cause of the fire.  Defendant expressed that "there is a strong likelihood" that Cumberland Insurance would sue C.O.P.D., and Ms. Connor might bring a wrongful death suit.  Defendant repeated its demand for indemnification under the Agreement.  (Id. Ex. 12.)

On June 15, 2005, the Plaintiffs' lawyer wrote the Defendants expressing frustration with their lack of communication and requesting a status update and "copies of any and all documents" related to the Fire Claim.  (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. F.)  Defendant responded on June 27 that the status had not changed since May and that all documents were available at an outside counsel's office in New Jersey.  (Id. Ex. G.)  This letter also stated that since Plaintiffs had failed to respond to the Defendant's demands for indemnification, pursuant to the Agreement, AHS was assuming "defense of this claim at the Sellers' sole expense."  (Id.)  On July 15, Plaintiffs' lawyer sent a letter to Defendant stating that they were continuing to investigate the demand for indemnification and they did not believe Defendant had "made a proper indemnification claim and, as such, no 'Indemnification Acknowledgment' has been provided." (Id. Ex. H.)  Plaintiffs again requested documents related to the lease of the bed to Ms. Connor and the Fire Claim.  After receiving no response, Plaintiffs followed up with an e-mail on September 13, 2005.  (Id. Ex. I.)

In his reply on September 15, Defendant's counsel stated that Cumberland and Ms. Connor had decided to move forward with litigation and that Defendant's outside counsel would share the complaints and entire file with Plaintiffs' counsel.  (Id. Ex. J.)  Defendant stated that he disagreed with Plaintiffs' conclusions regarding the indemnification demand.  (Id.)

Prior to this e-mail, Ms. Connor had filed a survival and wrongful death action against C.O.P.D. and other defendants in the Superior Court of New Jersey on July 22, 2005, containing the following counts: (I) design and/or manufacturing defect, (II) implied warranty, (III) negligence in maintenance and repair, and (IV) reckless disregard.  (Def.'s Mot. Summ. J. Ex. 5.) Cumberland Insurance also brought suit on August 22, 2005, alleging similar counts including design and manufacturing defects.  (Id. Ex. 4.)  The two suits were later consolidated [hereinafter "the Fire Suit"].  (Def.'s Statement Undisputed Fact ¶ 24.)

Between November 2006 and May 2007, Defendant's counsel sent numerous e-mails and letters to Plaintiffs regarding the status of the Fire Suit and requests for Plaintiffs' counsel to participate, several of which appear to have been ignored.  (Def.'s Mot. Summ. J. Ex. 8.) Defendant settled the matter with Ms. Steves on July 12, 2007, for $400,000 and with Cumberland Insurance on August 27, 2007, for $90,000, after its motion for summary judgment was denied by the New Jersey court (Def.'s Statement Undisputed Facts ¶ 29, Pl.'s Counter-Statement Undisputed Fact ¶ 35.)  On September 11, 2007, AHS demanded indemnification from the escrow fund of the $490,000 in settlement costs plus $624,936.86 in attorneys' fees and associated costs.  (Def.'s Statement Undisputed Facts ¶ 30).  The Bowmans refused to indemnify the plaintiffs and filed this suit seeking a declaratory judgment to release the entire $1.75 million in escrow.

**II.    Procedural History**

Plaintiffs filed their Complaint  (Doc. No. 1) on September 20, 2007 against AHS and Commerce Bank.  Plaintiffs dismissed claims against Commerce Bank on October 25, 2007 (Doc. No. 4).  Defendant filed its Motion for Summary Judgment (Doc. No. 21) and a Motion to Stay

Discovery pending resolution of its Summary Judgment Motion (Doc. No. 22) on June 9, 2008.

Plaintiffs filed a Response and Cross-Motion for Summary Judgment (Doc. No. 27) on June 30,

2008.  Defendants filed a Response and Reply (Doc. No. 29) on July 11, 2008.  Plaintiff filed a

Reply (Doc. No. 30) on July 18, 2008.  This Court granted the Motion to Stay Discovery and

stated its intention to accelerate review of the Motion for Summary Judgment (Doc. No. 32) on

August 29, 2008.

**III.     Parties' Contentions**

Defendant argues that the Bowmans violated two express duties under the Agreement: (1)

the duty to defend the Fire Claim and (2) the duty to indemnify AHS.  Defendant indicates that the

Fire Suit contained allegations of manufacturing and design defects that constitute indemnifiable

claims under the Agreement.  Defendant contends that it provided prompt Notice of the Claim on

February 11, 2005, and because Plaintiff did not respond, Defendant defended and settled the

claim.  Since Defendant settled the claim, it argues that Defendant has a right to indemnification

under the Agreement for the product defect claims.  Moreover, Defendant is seeking summary

judgment as to liability <u>only</u>.  Defendant notes that limited discovery and a hearing to assess

damages will be necessary to determine the amount of damages recoverable by AHS based on the

product defect portion of the Fire Claim.

Plaintiffs contend that Defendant never provided proper Notice of Claim under the

Agreement since Defendant's initial letters to Plaintiffs pre-dated a definite claim by Ms. Steves's

Estate and Cumberland Insurance.  Further, Defendant failed to provide supporting documentation

and to keep Plaintiffs informed of developments in the Fire Claim, as required by the Agreement.

As such, Plaintiffs argue that they could not determine whether the Fire Claim contained an

indemnifiable, i.e., pre-Closing, claim, and as a result Plaintiffs could not answer any demand for indemnification.  Acknowledging indemnification would require Plaintiffs to bear all costs for defense and any ultimate liability, so Plaintiffs argue that they required more information about whether the claims were in fact indemnifiable.  Plaintiffs contend that Defendant used their alleged Notice of Claim on February 11, 2005, to avoid release of the escrow funds under the Escrow Agreement, scheduled for February 15, 2005.  In the alternative, Plaintiffs argue that if Defendant's Notice of Claim was proper, Plaintiffs' share of the liability and fees is de minimis compared to the total amount, and this issue must be decided prior to granting summary judgment. Plaintiffs contend that the Defendant's inadequate maintenance of the bed, and not the product defect claim, was Defendant's main inducement to settle the Fire Claim.

        Defendant counters that Plaintiff's duty to defend was triggered no later than summer 2005.  Defendant emphasizes that it is only seeking indemnity on the product defect claims, not the entire settlement amount.  Defendant argues that Plaintiff admits the Fire Claim included an indemnifiable claim by the time of the Fire Suit Complaint filings in late summer 2005.  In addition, Defendant contends that under the Agreement a defective Notice of Claim does not affect the Plaintiff's indemnification obligation unless Plaintiff is prejudiced by the defect, which Plaintiff is not.  Finally, Defendant argues that Plaintiff misstates the consequences of acknowledging indemnification for the entire claim; if it had assumed the Fire Claim defense, Plaintiff could recover non-indemnifiable claims from AHS.

        Plaintiffs reiterate their argument that AHS failed to provide proper Notice of Claim pursuant to the Agreement.  At best, Plaintiffs contend that Defendant gave premature notice, and the Agreement was silent on how to rectify such notice.  Further, Plaintiffs argue that the Fire Suit

Complaints did not serve as adequate notice under the Agreement and Defendant had already undertaken the defense of these claims by the time Plaintiff was fully informed of them.  Finally, Plaintiffs contend AHS's own negligence with regards to the beds would have made Plaintiff's defense of the Fire Claim impossible.

## IV.    Legal Standard

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions.  Se. Pa. Transit Auth. v. Pa. Pub. Util. Comm'n, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making

a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**V.     Discussion**

 A.     Plaintiffs' Indemnity Obligations

  The construction of an indemnity contract is a question of law. Jacobs Constructors, Inc. v. NPS Energy Services, Inc., 264 F.3d 365, 371 (3d Cir. 2001). Under Pennsylvania law, courts must strictly construe the scope of an indemnity agreement against the party seeking indemnification. Id. If the indemnity clause is clear and unambiguous, the parties' intentions should be determined primarily by looking to the language in the agreement. Id. The parties' disagreement over the interpretation of the clause does not necessarily render the clause ambiguous. Id. "In interpreting the scope of an indemnification clause, the court must consider the four corners of the document and its surrounding circumstances." Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 472 (Pa. Super. Ct. 2003) (quoting County of Del. v. J.P. Mascaro & Sons, 830 A.2d 587, 591 (Pa. Super. Ct. 2003)).

  The scope of the Agreement is not at issue here. Under the terms of the Agreement as related to the Fire Claim, Plaintiff's only potential indemnity obligations are product defects that existed prior to February 1, 2003 (the Effective Date of Excluded Liabilities) and breaches of representation or warranty made at the time of sale of C.O.P.D. (Def.'s Mot. Summ. J. Ex. 16 ¶¶ 9.1(a), 1.1.) Such representations and warranties include that C.O.P.D.'s machinery and equipment were in good working condition and that C.O.P.D. was in compliance at all times with

public health and safety and product liability laws.  (Id. Ex. 16 ¶¶ 5.8, 5.10, 1.1.)

Although Defendant sought indemnification for the entire Fire Claim settlement amount plus attorney's fees prior to the filing of this motion (Id. Ex. 14), its briefs make clear that Defendant is not asking the Court to expand the scope of the indemnity agreement beyond the product defect claims.  (Id. 12-13; Def.'s Resp. Pl.'s Cross-Mot. Summ J. & Reply 3.)  Plaintiff admits that the product defect claim in the Fire Suit Complaint, one of four counts, was an indemnifiable claim, since it relates to a pre-sale condition of the bed.  (Pl.'s Counter-Statement Undisputed Fact ¶¶ 32, 33; Pl.'s Resp. Def.'s Mot. Summ. J. 35.)  Therefore any claim based on a product defect falls within Plaintiff's indemnification obligations.

      B.      Plaintiffs' Duty to Defend

The duty to defend is separate and distinct from the duty to indemnify.  Jacobs, 264 F.3d at 376 (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (1987)).  The duty to defend is broader than the duty to indemnify, since it applies not only to claims that "'are' or 'reasonably appear to be' within the scope of the indemnity obligation but also to claims that 'arguably are' or 'might be found to be' within that scope." Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 650 (3d Cir. 1990).  "Generally, the duty to defend is triggered if the underlying complaint avers facts that would support indemnification under the agreement, and the indemnitor must defend until such time as the claim is confined to recovery that the contract does not cover." Mace v. Atl. Ref. Mktg. Corp., 785 A.2d 491, 500 (Pa. 2001) (Saylor, J., dissenting); accord Krueger Assoc. v. Am. Dist. Telegraph Co. of Pa., 247 F.3d 61 (3d Cir. 2001) (finding that a plaintiff filing suit against the indemnitee triggered the indemnitor's duty to defend regardless of whether the claim was meritorious); Beckwith Mach. Co. v. Travelers Indem. Co., 638 F.Supp.

-11-

1179, 1187 (W.D. Pa. 1986) (stating that the insurance company had a duty to defend claims "that were potentially within the scope of coverage").

The language of the Agreement regarding Plaintiff's duty to defend is clear.  In order to trigger Plaintiff's duty to defend an indemnifiable claim, Defendant had to furnish "prompt written notice to the Indemnitor of the commencement of any claim, action, suit or proceeding, or any threat thereof, or any state of facts which Indemnitee determines will give rise to a claim by the Indemnitee against the Indemnitor . . ."  (Def.'s Mot. Summ. J. Ex. 16 ¶ 9.3(a)(i)) (emphasis added).  The Agreement spells out that AHS was to provide the Bowmans with notice of a potential claim once they became aware of one, even prior to the filing of a formal Complaint.

Plaintiff places much emphasis on the language "will give rise to," arguing that AHS had to know with certainty that the Fire Claim contained an indemnifiable claim prior to being able to issue a valid Notice of Claim.  (Pl.'s Resp. Def.'s Mot. Summ. J. 25; Pl.'s Reply Def.'s Resp. Cross-Mot. Summ. J. 4).  Although the use of the word "will" is in some conflict with the words "any threat thereof" and "any state of facts," the provision makes clear the Parties' intent for anticipatory notice of a potentially indemnifiable claim.  Further, the provision states that the Indemnitee is to give notice when there are claims or facts "which Indemnitee determines will give rise to" an indemnifiable claim; therefore the Agreement places discretion on the Indemnitee to decide when notice is appropriate.

As regards to the Fire Claim, Defendant's initial February 11, 2005 letter and subsequent May 18, 2005 e-mail to Plaintiffs stating that a defect in the C.O.P.D. bed was a possible cause of the fire and was under investigation gave notice of a "threat" of an indemnifiable claim.  As Defendant points out, this early notice actually benefits and protects the Plaintiffs.  (Def.'s Mot.

-12-

Summ. J. 14 n.3.)  In fact, the Agreement states that failure to provide Notice does not affect indemnification obligations unless the Indemnitor is prejudiced by it.[3]

Regardless of the degree of certainty of an indemnifiable claim that is required to issue a Notice of Claim, Plaintiffs were provided notice of a claim they admit is indemnifiable by the time of Defendant's September 15, 2005 e-mail making them aware of the Steves Estate and Cumberland Insurance complaints.  Pennsylvania courts have taken a "relatively broad view" of whether a complaint triggers an indemnitor's duty to defend, including where the complaint itself did not trigger a duty but discovery responses did.  Berg Chilling Sys. Inc. v. Hull Corp., 70 Fed.Appx. 620, 624 (3d Cir. 2003) (non-precedential) (citing Heffernan & Co. v. Hartford Ins. Co., 614 A.2d 295 (Pa.Super. 1992)).  Here the complaints clearly alleged a claim that Plaintiffs admit is indemnifiable.  Therefore, by September 2005 at the latest, Plaintiffs had notice of an indemnifiable claim, which triggered its duty to defend.

Plaintiffs argue that Defendant's failure to provide adequate documentation of the Fire Claim renders Notice insufficient under the Agreement.  It may be true that Defendant initially did not keep Plaintiffs well informed of the status of the Fire Claim throughout the spring and summer of 2005 and did not respond to several of Plaintiffs' initial requests for information. (Pl.'s Resp. Def's Mot. Summ. J. 25-32).  However, prior to late July 2005, there were no court filings to provide Plaintiffs, and Plaintiffs were already on notice of a possible indemnifiable claim.  Further, Defendant's September 15, 2005 e-mail stated that the Steves and Cumberland

---

[3]This provision is similar to the standard for late notice for insurance indemnification adopted under Pennsylvania law.  See Brakeman v. Potomac Ins. Co., 371 A.2d 193, 196 (Pa. 1977) (holding that an insurance company is relieved of its coverage obligations if it can show both breach of the notice provision and prejudice).

complaints would be shared with Plaintiffs as well as the "entire file of factual information."[4]
Therefore, AHS fulfilled its duty under the Agreement, Section 9.3(a)(i), to provide relevant
documents related to the claim.

      C.     <u>Plaintiffs' Failure to Defend</u>

      The express language of Section 9.3(a)(ii) explains Plaintiffs' options once a Notice of
Claim occurred.  Plaintiffs had the choice to either submit written acknowledgment to Defendant
within thirty days of the Notice of Claim stating that they would undertake and prosecute the
defense of the indemnifiable claim, or failing to do that, the Indemnitee [AHS] could, upon
written notice, assume the defense and dispose of the claim at the sole cost and expense of the
Indemnitor [the Bowmans].  (Def.'s Mot. Summ. J. Ex. 16 § 9.3(a)(ii).)

      Regardless of whether Notice of Claim occurred on February 11, 2005, May 18, 2005, or
September 15, 2005, Plaintiffs never provided acknowledgment that they would defend the claim.
Defendant stated in its June 27, 2005 letter that it was assuming defense of the litigation since
Plaintiffs had failed to respond to the request for indemnification.  (Pl.'s Resp.  Def.'s Mot.
Summ. J. Ex. G.)  Even though Plaintiffs disputed the indemnification claim at that time, once an
indemnifiable claim had been made, they failed to take any action.  Therefore, Plaintiffs breached
their duty to defend the indemnifiable portion of the Fire Claim, namely the product defect count.
Plaintiffs argues that the consequences of assuming the defense would have been to forever
assume "full responsibility for all defense costs and for any ultimate liability," not just
indemnifiable claims.  (Pl.'s Resp. Def.'s Mot. Summ. J. 33.)  However, as Defendant counters,

---

      [4]The Record contains no evidence of whether this document production did in fact occur.
However the Court assumes that Plaintiffs would have brought this to the Court's attention if
there had been a prejudicial failure to produce documents once the Fire Claim commenced.

had Plaintiff undertaken the defense and determined that some or all claims were non-indemnifiable, Plaintiff would have had a claim against AHS.  (Def.'s Resp. Pl's Cross-Mot. Summ. J. & Reply 7.)

D.       Duty to Indemnify

The Perry-Ruzzi rule cited by Plaintiffs to argue against imposing a duty to indemnify states that indemnity contracts should not be construed to indemnify against the negligence of the indemnitee unless expressed in unequivocal terms.  Mace, 785 A.2d at 495 (citing Perry v. Pane, 66 A. 553, 557 (Pa. 1907)); Ruzzi v. Butler Petroleum Co., 588 A.2d 1, 5 (Pa. 1991)).  However this rule is limited to where a party seeks indemnification for its own negligence.  Id.  This rule is inapplicable here since Defendant only seeks indemnification for the product defect claims, which are due to Plaintiffs' negligence and/or assumption of liability, not Defendant's own negligence.

The right to indemnification includes "the legal issue of the scope of the indemnification agreement; the nature of the underlying claim; its coverage by the indemnification agreement; the reasonableness of the alleged expenses; and, where the underlying action is settled rather than resolved by payment of a judgment, the validity of the underlying claim and the reasonableness of the settlement."  McClure v. Deerland Corp., 585 A.2d 19, 22 (Pa. Super. Ct. 1991).  Applying McClure to the facts here, the Agreement states that product liability claims and related breaches of warranty in existence at the time of sale are subject to indemnification, and one claim in the Steves Complaint was a product liability claim.  The Agreement therefore covers this claim, and the Plaintiffs agree that this is an indemnifiable claim.  The reasonableness of expenses and settlement are disputed factual issues that can not be resolved on summary judgment.  Based on this analysis, the Court finds that Defendant has shown a right to indemnification.

-15-

As an additional matter, a claim for indemnification accrues when payment has been made to a third party.  Transp. Ins. Co. v. Spring-Del Assoc., 125 F.Supp.2d 836, 840 (E.D. Pa. 2001); accord Chester Carriers, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 767 A.2d 555, 563 (Pa. Super. Ct. 2001).  In this case, Defendant settled the Steves and Cumberland claims for $490,000 plus $624,936.86 in attorneys' fees.  Therefore, Defendant has a ripe claim for indemnification.

      C.     **Amount of Indemnifiable Claim**

Under the Agreement, Plaintiffs are only liable for the indemnifiable portion of the Fire Claim settlement and related attorneys' fees, i.e., the portion related to the product defect count, not the implied warranty, negligent maintenance and repair, and reckless disregard counts. Discovery and a hearing shall be conducted to determine this amount.  Plaintiffs argue their share of the settlement is de minimis, however, such issues will resolved in the damages determination.

**VI.   Conclusion**

For the foregoing reasons, the Defendant's Motion for Summary Judgment as to the duty to defend and the duty to indemnify is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALAN C. BOWMAN, | : | CIVIL ACTION |
| CHRISTINA BOWMAN | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOMECARE SUPPLY, LLC | : | NO. 07-3945 |

<u>**ORDER**</u>

AND NOW, this     30th     day of October, 2008, upon consideration of the parties' cross-motions for summary judgment and the responses thereto, it is hereby ORDERED as follows:

(1)     Defendant American Homecare Supply, LLC's Motion for Summary Judgment (Doc. No. 21) is GRANTED as to liability of Plaintiffs to defend and indemnify, in accordance with the foregoing discussion;

(2)     Plaintiffs Alan and Christina Bowman's Cross-Motion for Summary Judgment (Doc. No. 27) is DENIED;

(3)     A Rule 16 Conference will be held by telephone on Nov. 4, 2008, at 11:45 a.m.

(4)     Counsel shall discuss the extent of appropriate discovery, exchange of expert reports, if any, and a trial date, in advance of the conference.

BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL 07-08\07-3945 Bowman v. AHS\Memo re MSJ.wpd