**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ALAN C. BOWMAN                           :            CIVIL ACTION
CHRISTINA BOWMAN,                        :
                                         :
                 Plaintiffs,             :
                                         :
          v.                             :
                                         :
AMERICAN HOMECARE SUPPLY, LLC,           :    . NO. 07-3945
                                         :
                 Defendant.              :

## MEMORANDUM

**Baylson, J**                                        **June 25, 2009**


      The issue presented concerns the extent to which the attorney work product must

be disclosed in an indemnification claim, arising out of the settlement of underlying litigation.

Pending before this Court is Defendant American Homecare Supply's Motion for a Protective

Order (Doc. No. 37) and Plaintiffs Alan and Christine Bowman's Cross-Motion to Compel (Doc.

No. 40) in this indemnification suit between predecessor and successor corporate owners of a

business.  Plaintiffs argue that Defendant has waived the privilege as to certain documents related

to an underlying lawsuit defended and settled by Defendant under the "advice at issue" and

"common interest" doctrines.  For the following reasons, Defendant American Homecare

Supply's Motion is GRANTED in part, as to all attorney-client privileged documents, and

DENIED in part as to certain work-product protected documents as explained in this

Memorandum.   Plaintiffs Alan and Christina Bowman's Motion will be DENIED in part, as to

attorney-client privileged documents, and GRANTED in part as to certain work-product

protected documents.

## I.    Factual and Procedural Background

### A.    Facts

The Court more fully described the facts of this case in its Memorandum Opinion

granting Defendant's Motion for Summary Judgment dated October 30, 2008, Doc. No. 34 .

However the Court will briefly review the relevant facts for the purposes of this Motion.  On

February 12, 2003, Plaintiffs and Defendant entered into a Stock Purchase Agreement

("Agreement") for Defendant to purchase Plaintiffs' home health care business, C.O.P.D.  (Mem.

Summ. J. 1.)  Under the Agreement, Plaintiffs were required to indemnify Defendant for any

product liability or faulty workmanship claims arising from or related to "any event, condition,

fact or circumstance" prior to the closing date of the Agreement.  (Id. at 2.)

On January 24, 2005, a fire occurred in the home of Ms. Connor, killing Ms. Connor's

mother Mertle Steves.  (Id. at 3.)  Ms. Steves rented and used a C.O.P.D. electric home

healthcare bed.  (Id. at 3.)  C.O.P.D. purchased the bed in 1998, prior to the closing date of the

Agreement.  (Id.)  The bed was suspected to be a cause of the fire.  (Id.)  On July 22, 2005, the

Estate of Ms. Steves filed a survival and wrongful death suit against C.O.P.D. and other

defendants.  (Id. at 6.)  Ms. Connor's insurance company also filed suit against C.O.P.D. on

August 22, 2005.  (Id.)  Both suits were later consolidated ("Fire Suit").

Attorneys for Plaintiffs and Defendant exchanged numerous communications regarding

the Fire Suit, but Plaintiffs' attorney took no part in defending the suit.  (Id. at 4-6.)  Defendant

settled the Fire Suit for $490,000 on July 12, 2007.  (Id. at 6)  On September 11, 2007, Defendant

demanded indemnification from Plaintiffs for the $490,000 settlement plus $624,936.86 in

attorneys' fees to be paid from money being held in escrow following Plaintiffs' sale of C.O.P.D. to Defendant. (Id.) Plaintiffs refused to indemnify and filed this declaratory judgment action to release the entire $1.75 million in escrow. (Id.)

### B.    Procedural History

Plaintiffs filed a Complaint on September 20, 2007 (Doc. No. 1). Defendant filed a Motion for Summary Judgment on June 9, 2008 (Doc. No. 21), and Plaintiff filed a Cross-Motion for Summary Judgment on June 30, 2008 (Doc. No. 27). The Court granted Defendant's Motion as to Plaintiff's duty to defend and indemnify and denied Plaintiff's Motion on October 30, 2008. (Doc. No. 34). The Court found that Plaintiffs had a duty to defend and indemnify Defendant as to the product defect count of the Fire Suit but not as to the other three counts (implied warranty, negligent maintenance and repair, and reckless disregard). (Memo. Summ. J. 16.) Therefore, the remaining issues to be resolved was apportionment of the settlement amount and attorneys' fees between the indemnifiable and non-indemnifiable claims.

On April 29, 2009, Defendant filed a Motion for Protective Order (Doc. No. 37), seeking to limit its production obligations to documents not protected by the attorney-client privilege and/or work product doctrine, relying on the seventeen boxes of documents it had already produced to Plaintiffs. On May 6, 2009, Plaintiffs filed a Response and Cross-Motion to Compel (Doc. No. 40), seeking responses to certain interrogatories and document requests withheld by Defendant and unredacted versions of previously produced documents. The Court held a recorded telephone hearing on May 8, 2009, in which it advised the parties that it was holding the matter under advisement pending production of a revised and expanded privilege log, in camera inspection of purportedly privileged documents, and supplemental briefing (Doc. No. 42). The

-3-

parties submitted supplemental briefs on June 9, 2009 (Doc. No. 46, 47).

The Court held an additional hearing on the arguments raised in the parties' supplemental briefs on June 22, 2009.  At the hearing, after arguments, the Court advised the parties that it was denying Defendant's Motion and granting Plaintiffs' Motion but only as to documents in which work product protection was claimed (in whole or part) that specifically relate to (1) settlement amount and/or apportionment and (2) counsel's evaluation of the Fire Suit claims.  As to all other documents, the Court granted Defendant's Motion and denied Plaintiffs' Motion.  This Memorandum contains supporting legal analysis for this ruling, and outlines the procedure to be followed..

**II.     Discussion**

Plaintiffs concede that the disputed documents listed on the privilege log and produced to the Court in camera are generally privileged.  Instead, Plaintiffs' Supplemental Brief argues for waiver of the privilege based on the advice at issue doctrine and the common interest doctrine. The party challenging the privilege has the burden of proving that a waiver of the privilege occurred.  See Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc., 227 F.R.D. 382, 390 (W.D. Pa. 2005).  In addition, Plaintiffs argue that communications between Defendant's Fire Suit counsel and indemnification counsel were not privileged.  However, at oral argument on June 22, after the Court expressed doubt as to the discovery of privileged communications, plaintiffs voluntarily withdrew their common interest doctrine argument and their advice at issue argument as to documents protected by the attorney-client privilege. Therefore, the Court will not consider this issue but will confine its analysis to documetns which contain attorney work product, in whole or part.

-4-

### A.    Work Product Waiver Based on Advice at Issue

In Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851 (3d Cir. 1994), the

Third Circuit articulated the standard for the advice at issue doctrine: "The advice of counsel is

placed in issue where the client asserts a claim or defense, and attempts to prove that claim or

defense by disclosing or describing an attorney client communication." Id. at 863.  Courts within

the Third Circuit continue to apply the standard enunciated in Rhone-Poulenc.  See Nesselrotte v.

Allegheny Energy, Inc., 2008 WL 2858401, at *6 (W.D. Pa. July 22, 2008); Saltern v. Nor-Car

Federal Credit Union, 2003 WL 21250578, at *1 (E.D. Pa. Apr. 17, 2003).  However, this

standard applies to waiver of the attorney-client privilege, and in Rhone-Poulenc, the Third

Circuit stated that waiver of the privilege does not necessarily lead to waiver of work product

protection.  32 F.3d at 866.  See also Chimie v. PPG Indus., Inc., 218 F.R.D. 416, 421 (D. Del.

2003) (stating that the waiver of the privilege did not necessarily mean waiver of work product

protection); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486-87 n.17-18 (3d Cir. 1995)

(applying the Rhone-Poulenc standard but noting that had the advice at issue argument been

made as to work-product protected documents, as opposed to privileged documents, a different

analysis would be required); but see SmithKline Beecham Corp. v. Apotex Corp., 2005 WL

2436662, at *2 (E.D. Pa. 2005) (stating that if a defendant raises an advice of counsel defense, it

waives both the attorney-client and work product privileges as to that defense); Novartis Pharm.

Corp. v. EON Labs Mfg., Inc., 206 F.R.D. 396, 399 (D. Del. 2002) (finding that invoking a

reliance on advice of counsel as a defense constitutes an express waiver of both attorney-client

privilege and work product doctrine); Northwood Nursing & Convalescent Home, Inc. v.

Continental Ins. Co., 161 F.R.D. 293, 298 (E.D. Pa. 1995) (applying the Rhone-Poulenc standard

to assess work product waiver and finding that it was not met).

The work product doctrine is a qualified, not absolute, privilege, and "like other qualified privileges, it may be waived." Harding v. Dana Transport, Inc., 914 F.Supp. 1084, 1098 (D.N.J. 1996) (quoting United States v. Nobles, 422 U.S. 225, 239 (1975) (internal quotations omitted)). Attorney work product is discoverable when the party seeking discovery has a "substantial need" for the information, and there is no other source available to obtain the substantial equivalent of the material sought without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). In considering waiver of work product protection, the Third Circuit in Rhone-Poulenc stated that "the protection stemming from the work product doctrine belongs to the professional, rather than the client, and [ ] efforts to obtain disclosure of opinion work product should be evaluated with particular care." 32 F.3d at 866 (citations omitted). Based on this standard, the Court must carefully balance the competing interests in evaluating waiver of the work product protection.

Plaintiffs argue that Defendant has placed the subject matter of the work product of Defendant's Fire Suit counsel, of Archer & Grenier, principally Christopher Gibson, Esq. at issue. They assert that Mr. Gibson's opinions, mental impressions, and legal theories regarding the strength of the indemnifiable versus non-indemnifiable claims will be critical to both determining the reasonableness of Fire Suit settlement costs and attorneys' fees, and apportioning among all claims, the amount for which each party is responsible. Plaintiffs' Supplemental Brief relies heavily on two cases outside of the Third Circuit for this argument: Abbott Labratories v. Alpha Therapeutic Corp., 200 F.R.D. 401 (N.D. Ill. 2001) and Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (2002).

Although the Third Circuit has not spoken squarely on the applicability of the advice at

issue waiver as to work product protection, this Court is persuaded that Plaintiff is correct for

two reasons.  First, as in <u>Abbott</u>, Plaintiffs' and Defendant's Agreement contained a cooperation

clause:

> The parties hereto agree to render to each other such assistance as they may
> reasonably require of each other in order to ensure the proper and adequate
> defense of any such claim, action, suit or proceeding. . . . the Indemnitee shall
> cooperate with the Indemnitor and provide such assistance . . . as the Indemnitor
> may reasonably request in connection with the defense of any such claim, action,
> suit or proceeding, including providing the Indemnitor with access to and use of
> all relevant corporate records . . .

(Def.'s Mot. Summ. J. Ex. 16 ¶ 9.3(a)(iii).)   The <u>Abbott</u> court relied on strikingly similar

language to find that the purchasing company in that case was contractually obligated to produce

documents to the selling company in an indemnification suit following the purchasing company's

defense of an underlying suit.  200 F.R.D. at 410 (using the cooperation clause to find both the

attorney client privilege and work-product protection inapplicable).  Although this Court is not

prepared to find that Defendant is breaching a contractual duty to share Fire Suit attorney work

product with Plaintiffs, it finds the contractual provision persuasive as to the parties' duty to

share all (including attorney work product) documents related to the Fire Suit.

Second, the Court is convinced that fairness and equity dictate production of all work-

product protected documents to Plaintiffs relevant on the indemnification issue.  The <u>Abbott</u>

court reasoned that in the interest of fairness, the entire case should not be allowed to "turn on an

issue upon which one party has no knowledge and is barred from accessing the necessary

information while the other party is able to use the information to establish its claim while

shielding it from disclosure."  <u>Id.</u> at 410-11.  The court continued that since issues surrounding

conduct in the underlying litigation are central to the question of indemnification, documents

relating to that conduct were not only vital, but also the only, means by which the seller could

evaluate the validity of the purchaser's indemnification claim and the reasonableness of the costs

claimed. Id. at 411. This Court is similarly persuaded by fairness and policy arguments, that in

such an indemnification suit based on multiple claims, some indemnifiable and some not, the

Fire Suit counsel's work product is central to the indemnification damages that this Court must

determine.

In addition, the Court finds the Eighth Circuit's reasoning in Padima persuasive. There

the Eighth Circuit stated that in evaluating the waiver of work-product protection, the court must

look to "whether the interests [of] fairness and consistency mandate a finding of waiver." 281

F.3d at 732. "When a party seeks a greater advantage from its control over work product than the

law must provide to maintain a healthy adversary system, the privilege should give way." Id.

(quoting In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982) (internal quotations omitted)). In

that case, the Eighth Circuit determined that the indemnitor waived work product protection

where the discovery sought involved "crucial issues in the indemnification action," including the

reasonableness of attorneys' fees in the underlying litigation. Id. Therefore, the court concluded

that "[f]airness requires that the work product privilege must give way . . . ." Id. Following the

court's assessments of fairness in Abbott and Padima, this Court is persuaded that fairness

requires production of attorney work product from the Fire Suit.

Although this Court notes Judge Joyner's assessment that "[e]ven if the attorney's work

product is highly relevant to the present litigation [this] does not necessarily mean that the work

product is at issue," Northwood, 161 F.R.D. at 298, the Court believes that the specific facts of

this indemnification claim dictate that Fire Suit work product is directly at issue. In Northwood,

-8-

the insured brought a declaratory judgment action against its insurer that the insurer had a duty to defend two third-party suits, where the insurer had only agreed to defend against one. Judge Joyner reasoned that the insured's counsel's work product in the underlying litigation was not directly at issue to the indemnification suit, which was essentially a breach of insurance contract claim. However, in this case, the Court has already construed the Agreement to determine that an indemnifiable claim, one of the four claims in the Fire Suit, exists. The sole remaining issue requires assessing and apportioning damages between the multiple claims in the Fire Suit, and Mr. Gibson's work product regarding his assessment of the claims is directly at issue in determining such damages. As Plaintiffs argued, the Court expects that Mr. Gibson will be a witness for Defendant, and therefore Plaintiffs' effective cross-examination of him necessarily depends on access to the documentation about his Fire Suit representation, which has now terminated. Further, this Court finds that Plaintiffs have sufficiently shown "substantial need" and no other means to procure these documents under Rule 26(b)(3)(A)(ii).

Based on the above analysis, the Court finds that Plaintiffs are entitled to Fire Suit counsel's work product documents that specifically discuss: (1) the Fire Suit settlement amount and/or allocation and (2) counsel's evaluation of the Fire Suit claims. Plaintiffs should identify such documents from the privilege log within one week. However, Plaintiffs are not entitled to documents that contain communications to the client . If a document contains attorney work product which was communicated to the client, defendant may redact portions which show the communication, but must produce the portion containing work product. Defendants may redact any other information which does not fall within the two items stated above. Following Plaintiffs' identification, Defendant shall assert any objections to Plaintiffs' document request,

and the parties should confer to resolve their disputes.  If disputes remain, the parties are to advise the Court by July 17, 2009, and the Court will then review disputed documents one-by-one to determine whether they are discoverable, possibly at a hearing.

**B.     Communications Between Fire Suit and Indemnification Counsel**

Plaintiff also argued that certain communications were not privileged and therefore were discoverable.  Specifically, Plaintiff asserted that communications between Defendant's indemnification counsel and Fire Suit counsel regarding the indemnification suit, which are listed on the privilege log, are not privileged because the Fire Suit counsel was never retained to defend the indemnification suit and therefore is not Defendant's counsel in this matter.

The Court disagrees.  As Judge Joyner articulated in <u>Northwood</u>, the attorney-client privilege extends to communication between attorneys and their agents, so communications between the underlying litigation counsel and indemnification counsel are privileged.  161 F.R.D. at 297.  Since indemnification counsel may communicate with Fire Suit counsel as an agent, regardless of whether the Fire Suit counsel was retained in the indemnification matter, their communications remain protected by the attorney-client privilege.

**III.   <u>Conclusion</u>**

Based on the above analysis, the Court finds that Plaintiffs are entitled to production of certain work-product protected documents that relate specifically to counsel's mental impressions, legal opinions, and theories regarding settlement and an evaluation of the claims in the underlying Fire Suit.

An appropriate Order follows.